**Robert WEBSTER, Petitioner-Appellee,**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellant.**

**No. 74–2316.**

United States Court of Appeals, Fifth Circuit.

Dec. 26, 1974.

John L. Hill, Atty. Gen., Larry F. York, Ben M. Harrison, Asst. Attys. Gen., Austin, Tex., for respondent-appellant.

Joe D. Clayton, Tyler, Tex. (Court-appointed), for petitioner-appellee.

Before BROWN, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

AINSWORTH, Circuit Judge:

W. J. Estelle, Director of the Texas Department of Corrections, appeals from the granting of habeas corpus to petitioner Robert Webster. Petitioner was convicted of theft in Texas in 1968. At his punishment hearing the state court applied the Texas Habitual Criminal Act[1] to set his sentence at life imprisonment. One of the offenses submitted to the court as a basis for enhancement of punishment was Webster's conviction of robbery by assault on March 25, 1938. Webster's sole contention in his habeas petition was that the 1968 sentence was unconstitutionally enhanced because the 1938 conviction was based on an uncounseled guilty plea. The District Court accepted petitioner's allegations and granted the habeas petition. We reverse.

## I.

The importance of the right to be represented by legal counsel in a criminal proceeding and to be provided with counsel if indigent is beyond dispute. See Gideon v. Wainwright, 372 U. S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). An uncounseled conviction cannot be used directly as a basis of punishment or indirectly as a basis for enhancement of punishment. Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). The right of indigent defendants to have counsel appointed, as announced in Gideon v. Wainwright, *supra,* has been held to apply retroactively to both direct and collateral uses of pre-*Gideon* uncounseled convictions. See, e. g., Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964); Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). The question we confront in this case is whether petitioner proved that he was in fact without counsel at the time of his guilty plea in 1938.

The fundamental rules by which petitioner's claim must be judged are well settled. The burden of proof is on the petitioner in a habeas corpus proceeding. Swain v. Alabama, 380 U.S. 202, 226–227, 85 S.Ct. 824, 839–840, 13 L.Ed.2d 759 (1965); Williams v. Estelle, 5 Cir., 1974, 500 F.2d 206 (1974); Richardson v. State of Texas, 5 Cir., 1970, 425 F.2d 1372, 1373. A judgment of conviction must be presumed to have been reached in accordance with due process until otherwise shown. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938); United States v. Marcello, E.D.La., 1962, 210 F.Supp. 892, aff'd 5 Cir., 1964, 328 F.2d 961.

> If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.

Adams v. United States, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 143 A.L.R. 435 (1942). See Stroble v. California, 343 U.S. 181, 198, 72 S.Ct. 599, 607, 96 L.Ed. 872 (1952); Mallonee v. Lanier, 5 Cir., 1966, 354 F.2d 940; United States v. Branan, 6 Cir., 1972, 457 F.2d 1062, 1066; Barbara v. Johnson, 6 Cir., 1971, 449 F.2d 1235, 1237; United States ex rel. Stickler v. Tehan, 6 Cir., 1966, 365 F.2d 199, 201; United States ex rel. Castillo v. Fay, 2 Cir., 1965, 350 F.2d 400, 401.

Although the District Court did not directly address the question of the burden of proof, its opinion suggests the court believed either that the State must bear the burden of proving petitioner had counsel, or that once petitioner alleged lack of counsel, the burden of

---

1. Vernon's Tex.Rev.Code Ann. § 12.42: Penalties for Repeat and Habitual Felony Offenders. . . . (d) If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life.

proof shifted to the State.[2] In Gutierrez v. Estelle, 5 Cir., 1973, 474 F.2d 899, 900, we concluded that the petitioner "properly put the state to its burden of defending the prior enhancing conviction." We believe this statement merely acknowledges that a conviction used collaterally is subject to the same constitutional scrutiny given to a conviction that is itself the direct basis of punishment. *Gutierrez* does not place the burden of proof on the state in post-conviction proceedings attacking collateral use of a conviction. See Wesley v. State of Alabama, 5 Cir., 1974, 488 F.2d 30, 31.

## II.

■ With these principles in mind, we turn to the record and ascertain that the District Court erroneously interpreted the evidence. Petitioner's case rested entirely on his uncorroborated testimony that he was not represented by counsel when he pleaded guilty. Against this testimony the State offered documentary evidence that counsel was appointed for petitioner. The indictment in petitioner's case bears the notation "Attorneys —Bell and Meyer." Bell is the name of a prosecutor assigned to the court in which petitioner pleaded guilty. Meyer was apparently a reference to a defense counsel. The Criminal Docket Sheet on which petitioner's guilty plea is recorded bears the same notation, as does the Criminal Docket for that court. The Docket Sheet also reveals that attorney Meyer represented a defendant in another case heard that same day. Finally, the Judgment and Sentence form recites that Webster "appeared in person and by counsel."

The District Court considered this evidence insufficient to establish that petitioner was represented by counsel, citing Gutierrez v. Estelle, 5 Cir., 1973, 474 F.

2d 899, 900, and Dulin v. Henderson, 5 Cir., 1971, 448 F.2d 1238. In *Dulin* it was undisputed that no attorney appeared for the defendant. The only issue was whether he had waived his right to counsel. See United States v. Lewis, 5 Cir., 1973, 486 F.2d 217; Craig v. Beto, 5 Cir., 1972, 458 F.2d 1131. In *Gutierrez* we said that "[a] minute entry alone is insufficient to prove previous representation by counsel . . . ." The entry referred to there was only a form recitation that the defendant "appeared in person and by counsel." Similarly in Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), which we relied on in *Gutierrez,* there was no indication in the court records that defense counsel had been appointed. See Henley v. Ellis, 5 Cir., 1956, 228 F.2d 657; Brown v. United States, 4 Cir., 1973, 483 F.2d 116, 121. In this case we have three documents recording the names of the attorneys.

On facts similar to those in the present case we recently affirmed a denial of habeas corpus relief. In Jiles v. Beto, 5 Cir., 1971, 442 F.2d 569, petitioner alleged lack of counsel. The State offered the trial judge's marginal notations of the names of the attorneys on court records, although the records themselves carried no reference to the attorneys, both of whom were shown to be practicing in the jurisdiction at the time of petitioner's guilty plea. In the present case we have, in addition to marginal notations on the docket sheet, an official entry in the docket book and a notation on the indictment; and the fact that at least six attorneys named "Meyer" were practicing in Texas in 1938.

■■ We believe the District Court gave insufficient weight to the State's documentary evidence. Official records

2. The court stated:

[T]his court is unable to say that petitioner was represented by counsel at either the convicting or sentencing stages of his 1938 plea of guilty . . . .

Since this court concludes that the evidence fails to show that petitioner was af-

forded counsel at both the convicting and sentencing stages of the criminal process, the enhancement sentence of life imprisonment relying on this prior conviction is invalid.

are entitled to a presumption of regularity. See Williams v. Babineaux, 5 Cir., 1966, 357 F.2d 481, 482; United States ex rel. Rambert v. New York, 2 Cir., 1966, 358 F.2d 715, 717; United States ex rel. Machado v. Wilkins, 2 Cir., 1965, 351 F.2d 892, 894. The admissibility of such records rests on the presumption that sworn public officials faithfully execute their duties. "The official duty and the habit of honesty and accuracy in the performance of such duties supply the element of special trustworthiness." C. McCormick, Law of Evidence § 291 (1954). The same special reliability that warrants relaxing the hearsay rule as to these records also warrants according them great evidentiary weight.

The State also offered the deposition of Spurgeon E. Bell, the prosecutor at petitioner's guilty plea and later Chief Justice of the Court of Civil Appeals in Houston, Texas. Chief Justice Bell testified that although he had no specific recollection of petitioner's 36-year-old conviction, it was the uniform practice of the Criminal District Court to appoint counsel for indigent defendants. He also stated he was familiar with the practices of the judges in that court, one of whom took petitioner's plea,[3] and that these judges regularly appointed counsel for indigent defendants. In light of Chief Justice Bell's description of the procedures in that court, it is very unlikely that counsel was not appointed for petitioner. He also testified that he recalled a man named Meyer who regularly represented defendants in the Criminal District Court in Houston.

The District Court discounted Bell's testimony because the prosecutor had no specific recollection of petitioner's case and because he "testified that he was certain that the man he remembered named Meyer was not one of the six attorneys who were listed by the Supreme Court as licensed to practice prior to 1939." We believe Chief Justice Bell's deposition deserved more weight than the District Court gave it. Bell did recall specifically an attorney named Meyer appearing frequently in the criminal court, and although a specific recollection of petitioner's case would have been virtually conclusive evidence, the testimony of this highly reputable witness was still of considerable probative value.

We also question the District Court's conclusion that Bell was certain none of the Meyers licensed by the Texas Supreme Court in 1938 was the Meyer who appeared in criminal court. When asked whether he was confident that neither of two of the Meyers was the correct one, Bell answered yes, but also stated that he knew nothing more than what he had stated in an earlier deposition. In that deposition he stated only that he could not confirm that any of the Meyers listed in Martindale-Hubbell as practicing in Houston in 1938 was definitely the Meyer who appeared in criminal court. When shown the list of attorneys licensed by the Texas Supreme Court in 1938, Justice Bell stated that the initials of two of the six made no impression on him one way or the other. Moreover, the Clerk of the Texas Supreme Court certified that, prior to the organization of the State Bar of Texas in 1939, state district courts were authorized to issue licenses to practice law. The Clerk indicated that the records of pre-1939 licensing were quite possibly incomplete.[4]

---

3. It was unclear from the records and testimony which judge took petitioner's plea in 1938.

4. The District Court, apparently relying on Bell's inability to identify any of the Meyers listed on the Supreme Court's list as the Meyer he recalled, stated that the State had failed to show that petitioner was represented by a licensed attorney. Bell also testified, however, that Meyer was generally accepted as a licensed attorney in the Criminal District Court.

The court below also held that the State of Texas had not proved that even if an attorney was appointed, he actually appeared with petitioner at the entry of the plea. We are at a loss to understand, however, what further proof of actual appearance the State could ever offer in a case in which the disputed conviction is based on a guilty plea. Trial judges and prosecutors—including

Our review of the documentary and testimonial evidence clearly shows that the judgment of the District Court cannot stand. We note, however, that even if the judgment below were affirmed, there would be no effect on petitioner's sentence. Petitioner has a long list of prior convictions: robbery with firearms, 2/17/38, 4/27/38, 5/17/38; theft from person, 3/12/38; escape, 5/1/57; assault with a prohibited weapon, 5/1/57; robbery by assault, 5/1/57; burglary, 5/1/57; felony theft, 5/1/57; driving while intoxicated (repetition), 1/23/67; theft, 11/4/46. Where enhancement could have been based on other convictions, reliance on an invalid one is harmless. Cline v. United States, 5 Cir., 1972, 453 F.2d 873.

Reversed.

those blessed with sufficient longevity to be able to testify concerning 36-year-old convictions—cannot possibly recall the specific facts of each of the staggering numbers of guilty pleas they observe during their careers.