# United States Court of Appeals for the Federal Circuit

2009-1267

CHRYSLER CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Alan Goggins, Barnes, Richardson & Colburn, of New York, New York, filed a combined petition for panel rehearing and rehearing en banc for plaintiff-appellant. With him on the petition were Lawrence M. Friedman and Eric W. Lander.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, filed a response to the petition for defendant-appellee. With her on the response were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Bruce J. Casino, Katten Muchin Rosenman LLP, of Washington, DC, for amicus curiae Ford Motor Company. With him on the brief were Catherine S. Wood; and Paulsen K. Vandevert, Ford Motor Company, of Dearborn, Michigan.

Appealed from: United States Court of International Trade

Judge Leo M. Gordon

# United States Court of Appeals for the Federal Circuit

2009-1267

CHRYSLER CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 07-00041, Judge Leo M. Gordon.

ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Before MICHEL, Chief Judge, NEWMAN, MAYER, LOURIE, RADER, BRYSON, GAJARSA, LINN, DYK, PROST, and MOORE, Circuit Judges.

PER CURIAM.

NEWMAN, Circuit Judge, dissents from the denial of the petition for rehearing en banc.

## O R D E R

Plaintiff-Appellant Chrysler Corporation filed a combined petition for panel rehearing and rehearing en banc. The panel requested a response from Defendant-Appellee the United States. The court granted Ford Motor Company leave to file a brief amicus curiae in support of Plaintiff-Appellant's combined petition.

The petition for rehearing was considered by the panel that heard the appeal, and thereafter the petition for rehearing en banc, the response to the petition, and

amicus curiae brief were referred to the circuit judges who are authorized to request a poll on whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1)    The petition of Plaintiff-Appellant Chrysler Corporation for panel rehearing is denied.

(2)    The petition of Plaintiff-Appellant Chrysler Corporation for rehearing en banc is denied.

(3)    The mandate of the court will issue on May 21, 2010.


                                            FOR THE COURT


  May 14, 2010                              /s/ Jan Horbaly
       Date                                 Jan Horbaly
                                            Clerk


cc:  Alan Goggins, Esq.
     Tara K. Hogan, Esq.
     Bruce J. Casino, Esq.


2009-1267                          2

# United States Court of Appeals for the Federal Circuit

2009-1267

CHRYSLER CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in Case No. 07-00041, Judge Leo M. Gordon.

NEWMAN, <u>Circuit Judge</u>, dissenting.

I respectfully dissent from the denial of Chrysler's petition for rehearing en banc. I write separately because of the importance of the issue in this era of electronic record-keeping, for the court holds that a government agency, Customs, can simply deny the correctness of its official electronic records, many years after the records were made and the underlying paper documents discarded, and then place the burden on the affected public to create fresh independent proof of the record or lose all benefit of the record. The government's refusal to rely, or permit the taxpayer to rely, on official government records, has profound consequences in today's electronic culture.

In this case, both the government and the taxpayer had routinely discarded the original hard copy documents that had been filed with the government before July 1, 1990, and from which the permanent electronic records had been made. Having destroyed the original documents and retained only the electronic records, the government has refused to refund the $782,407.45 that the electronic records show as

export tax received from Chrysler before July 1, 1990. My colleagues have endorsed that position.

This ruling is of far-reaching import with respect to the status and presumed correctness of government electronic records.

DISCUSSION

With enactment in 1987 of the Harbor Maintenance Tax, Customs established a procedure for collecting these new taxes and recording their payment. See Chrysler Corp. v. United States, 592 F.3d 1330, 1332–33 (Fed. Cir. 2010). In brief, all tax payments were sent to Customs' agent, the First Chicago Bank, and recorded by the Bank upon receipt, with date, payor, tax category, amount of tax, and other information. The electronic record of this information was sent daily to Customs, and the monetary amounts were deposited using the "lockbox" procedures established by the Treasury, which required Customs to "monitor lockbox performance on a daily basis to ensure quality service, reconciliation of detail remittance data, and the timely transferring of funds." U.S. Treasury Automated Lockbox Network Procedures §4660.10. On the day following the electronic transmission to Customs, the bank mailed to Customs the original paper documentation that had been filed with each payment.

In 1998 the Supreme Court ruled the export tax unconstitutional. United States v. U.S. Shoe Corp., 523 U.S. 360 (1998); see U.S. Const. art. I, §9 ("No Tax or Duty shall be laid on Articles exported from any State."). Refund was ordered, Swisher Int'l, Inc. v. United States, 205 F.3d 1358 (Fed. Cir. 2000), with "immediate refund of HMT on exports [based on] the payments shown in Customs' records," Swisher, 25 CIT 183, 184 (2001). Nonetheless, Customs refused to permit any refunds based on its permanent

electronic records of export taxes paid, stating that it had found some errors in these records; thus Customs required independent evidence for all refunds of export taxes paid.

The government does not dispute that the payments shown in its electronic records as export tax payments by Chrysler were received in the amount shown. However, the government held that it would not rely on its electronic records, or permit the taxpayer to rely thereon, as evidence that the payments recorded as export tax were indeed export tax payments. The government instead requires independent proof of every recorded export tax, before it refunds the export tax. For those payments for which Customs had not discarded the original paper documentation, Customs agreed to verify its electronic records against its retained paper records. However, for taxes paid before July 1, 1990, for which Customs had discarded its original documents, Customs requires the taxpayer to provide independent proof that the export tax payments shown on Customs' official electronic records were export tax payments.

However, by the time this issue of refunds arose, not only the government but also Chrysler had discarded their original paper documents for taxes paid before July 1, 1990. Thus Chrysler could not provide the required independent proof for this period. The government refuses to refund any of the taxes that its official records show as

export taxes paid by Chrysler in the period before July 1, 1990.[1]  Customs does not deny receipt of the taxes in the amount recorded as export tax payments received from Chrysler, and has not shown the likelihood of any error in its record of export tax payments received from Chrysler.  However, lacking independent evidence from Chrysler, Customs has denied the refund.

The general rule is that an official government record is presumed to be correct, and that the challenger of the official record bears the burden of showing that it is incorrect.  Butler v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001).  This presumption is no less applicable when the government seeks to impeach its own records.  In VWP of America, Inc. v. United States, 175 F.3d 1327, 1342 (Fed. Cir. 1999), this court stated:

> VWPA was entitled to rely on the presumption of correctness . . . reflected in the Customs documents . . . . Because, in the Court of International Trade, the government was the party challenging the correctness of the Cookshiretex-Levy transaction values, it was the government that bore the burden of demonstrating that those transaction values were incorrect or unreliable. However, it failed to produce any evidence to overcome the presumption of correctness.

See also Int'l Cargo & Sur. Ins. Co. v. United States, 779 F. Supp. 174, 177–78 (Ct. Int'l Trade 1991) (applying the presumption of correctness to electronic records summarizing electronic records, which presumption may be rebutted by evidence).  Contrary to this general rule, the government has now adopted a presumption of incorrectness of its records, and requires independent proof of every recorded export tax payment for which refund is requested.

My colleagues condone this procedure on principles of deference to

---

[1]  The amicus curiae states that the effect of this ruling extends to many taxpayers in addition to Chrysler, referring to "a large number of lawsuits and protests currently on hold."  See Brief of Ford Motor Company, April 1, 2010, at vi.

administrative rulemaking.  However, deference does not attach to an agency's improper implementation of a judicial decision.  The Court's ruling in U.S. Shoe Corp., and the Swisher decisions of the Federal Circuit and the Court of International Trade, required refund of the unconstitutional export tax.  See New York New York, LLC v. Nat'l Labor Relations Bd., 313 F.3d 585, 590 (D.C. Cir. 2002) (the Chevron principle does not require deference to an agency's interpretation of Supreme Court precedent); Charter Limousine, Inc. v. Dade County Bd. of County Comm'rs, 678 F.2d 586, 588 (5th Cir. 1982) (same).

The government stated that it found "widespread" errors in its electronic records, citing a net of $117 million misclassified as export tax, of $1.246 billion in total refunded HMT, Government Brief at 6 & n.2; that is, almost a 10 percent error rate, said to apply to some kinds of entries or taxpayers.  See Decl. of Thomas A. Smith, ¶¶18–30, May 6, 2008, at J.A. 326–27.  This confession of agency error cannot support the government's refusal to refund the entire tax payment or to explain whether a particular taxpayer's payments were subject to incorrect recordation.

Orderly and fair procedures support the presumption of correctness of official government records.  This presumption applies to the actions of public officials and to official records.  Riggs Nat'l Corp. v. Comm'r, 295 F.3d 16, 20 (D.C. Cir. 2002); see also Webster v. Estelle, 505 F.2d 926, 929–30 (5th Cir. 1974) ("Official records are entitled to a presumption of regularity").  Such a presumption "may only be rebutted through clear or specific evidence."  Riggs Nat'l Corp, 295 F.3d at 21.  Even "[i]nconsistencies or inaccuracies in documents accompanying official government records do not inherently rebut the presumption of regularity attaching to those official records, especially when

the accompanying documents do not directly address the matter sought to be proved by the official records." Id. at 22; see also Webster, 505 F.2d at 930 ("The admissibility of such records rests on the presumption that sworn public officials faithfully execute their duties.").

The presumption of correctness is designed to benefit not only the government but also the governed. When the government seeks to impeach its own official records, the government bears the burden of proof. Applying the normal presumptions and burdens, a reasonable protocol for reliance on official records that the government believes to be flawed might be established. As applied in this case, the court's ruling is unsupported in law, is untenable, and unjust. Absent sound reason, negation by Customs of its entire electronic record, requiring forfeiture of the entire $782,407.45 shown on Customs' official records as export tax paid by Chrysler before July 1, 1990, is not a reasonable procedure. Such confiscatory agency action belies the obligation that "the Government should turn square corners in dealing with the people." Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 61 n.13 (1984).

From the court's denial of the request to rehear this case en banc, I respectfully dissent.